IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| FRANK ALLAH-MENSAH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-16-1053 |
| LAW OFFICE OF PATRICK M. CONNELLY, P.C., | * | |
| Defendant. | * | |

\* \* \* \* \* \*

MEMORANDUM OPINION

Pending before the Court is a Motion to Dismiss filed by Defendant Law Office of

Patrick M. Connelly, P.C. ("Defendant" or "Law Office") (ECF No. 18). The issues have been

fully briefed, and the parties were granted a hearing on the matter which took place on

November 9, 2016. *See* ECF No. 25. For the following reasons, the Defendant's Motion shall be

DENIED.

## I.       BACKGROUND

On April 8, 2016, Plaintiff Frank Allah-Mensah ("Plaintiff") filed a putative class action

complaint on behalf of himself and all others similarly situated (the "Complaint"), alleging that

Defendant had violated 15 U.S.C. § 1692g(a)(3) and 15 U.S.C. § 1692e(10) of the Fair Debt

Collection Practices Act ("FDCPA"). ECF No. 1.

The Plaintiff contends that the Law Office sent him an initial collection letter on July 14,

2015 and that the letter "failed to advise that only the debt collector may assume the debt is valid

in the absence of a dispute from a consumer." ECF No. 1 at 2–3; ECF No. 1-3.[1] Based on this

omission, Plaintiff claims in Count I that the language of the collection letter is in direct

contravention of the FDCPA, which requires a debt collector to send the consumer a written

notice containing "a statement that 'unless the consumer, within thirty days after receipt of the

notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be

valid by the debt collector.'" ECF No. 1 at 5 (quoting §1692g(a)(3)).

In Count II, Plaintiff claims that because the letter failed to explain that only the debt

collector may assume the debt valid, this omission was "a false representation and deceptive

means to attempt to collect the debt by asserting that the debt would be assumed valid generally,

not just by the debt collector" in violation of §1692g. ECF No. 1 at 6. Plaintiff, on behalf of

himself and others similarly situated, seeks statutory damages as allowed by 15 U.S.C. §

1692k(a)(2)(A) of the FDCPA. ECF No. 1 at 6.

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack

of subject matter jurisdiction challenges a court's authority to hear the matter brought by a

complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Plaintiff carries the

burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th

Cir. 1999).

Under Rule 12(b)(1), Defendant may facially challenge subject matter jurisdiction,

asserting that the allegations in the complaint are insufficient. *Kerns v. United States*, 585 F.3d

---

[1] The Court considers the initial collection letter attached to the Complaint as part of the Complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

187, 192 (4th Cir. 2009) (citation omitted). Or Defendant may factually challenge subject matter jurisdiction, asserting "that the jurisdictional allegations of the complaint [are] not true." *Id.*

In challenging Plaintiff's standing, the Defendant raises both a facial and factual challenge.  Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dep't of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684–85 (D. Md. 2000). Defendant's factual challenge is predicated on his reliance on Plaintiff's disclosure of damages, an exhibit outside of the four corners of the Complaint.

When analyzing a facial challenge, the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*. *See Zander v. U.S.*, 786 F. Supp. 2d 880, 883 (D. Md. 2011) (applying *Iqbal/Twombly* standard to motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)) (citing *Kerns*, 585 F.3d at 192).

## III.   ANALYSIS

In moving to dismiss the present Complaint pursuant to Rule 12(b)(1), the Law Office contends that the Plaintiff and the other putative class members lack standing to pursue their

claims because they have failed to allege a cognizable injury-in-fact, as reiterated in the Supreme

Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). ECF No. 18-1 at 4.

Relying on *Spokeo*, Defendant contends that claims based solely on "bare procedural violations"

of a federal statute are insufficient to confer standing. ECF No. 18-1 at 5–6. Defendant argues

that under *Spokeo*, Plaintiff's mere allegation that the Defendant violated the FDCPA and his

claim for statutory damages fails to constitute a concrete harm sufficient for standing purposes.

ECF No. 18-1 at 4–6. Plaintiff responds that *Spokeo* did not alter constitutional requirements for

standing. ECF No. 19 at 3–4. Notwithstanding the disputed scope of *Spokeo*'s reach, Plaintiff

claims that he has suffered an injury-in-fact.

### 1. Legal Framework

Plaintiff bears the burden of establishing standing, as he "is the party seeking to invoke

federal jurisdiction." *Friends for Ferrell Parkway*, 282 F.3d at 320 (citing *Lujan v. Defenders of

Wildlife*, 504 U.S. 555, 561 (1992)). Where the lawsuit is a putative class action, any named

plaintiffs must allege that they personally have been injured. *Warth v. Seldin*, 422 U.S. 490, 502

(1975). They may not rely on injuries suffered by unknown class members to confer standing.

*Id.*; *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs

purporting to represent a class establishes the requisite case or controversy with the defendants,

none may seek relief on behalf of himself or any member of the class.").

The *Spokeo* Court reiterated the basic tenants of standing doctrine. 136 S. Ct. 1540, 1547

(2016). In *Spokeo*, the plaintiff alleged that Spokeo, an online background check company,

reported inaccurate information about him to its customers. The plaintiff then sued Spokeo under

the Federal Credit Reporting Act ("FCRA"). The Ninth Circuit concluded that the plaintiff's

"personal interests in the handling of his credit information," coupled with the purported "violations of statutory rights created by the [Act]," were sufficient to satisfy the injury-in-fact requirement of Article III standing. *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014).

The issue presented in *Spokeo* was whether the violation of a procedural right granted by statute presents an injury sufficient to constitute an "injury-in-fact" and satisfy the "first and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (internal quotations omitted). Rather than answer the question presented directly, the Supreme Court vacated the judgment and remanded so the Ninth Circuit could, in the first instance, reach the question of standing. The Court explained that the Ninth Circuit erred by focusing only on whether the plaintiff's purported injury was "particularized" without also assessing whether it was sufficiently "concrete." *Spokeo*, 136 S. Ct. at 1550 ("Because the Ninth Circuit failed to fully appreciate the distinction between concreteness and particularization, its standing analysis was incomplete."). The *Spokeo* Court thus confirmed that the "irreducible constitutional minimum" of standing is that a plaintiff must show: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan,* 504 U.S. at 560–61).

At issue here is the first element of standing—whether Plaintiff has suffered an "injury in fact" that is concrete, particularized, and actual or imminent. *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). A "concrete" injury is one that is "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548 (citing *Webster's Third New International Dictionary* 472 (1971); *Random*

*House Dictionary of the English Language* 305 (1967)). Tangible injuries plainly satisfy this

requirement, but intangible injuries may also "nevertheless be concrete." *Id.* at 1549.

Where the injury is intangible, *Spokeo* summarizes two approaches to meet the injury-in-

fact requirement. First, courts may consider "whether an alleged intangible harm has a close

relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in

English or American courts." *Id.* at 1549. As the high Court noted, "the law has long permitted

recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* at

1549 (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938)).

Second, where Congress has "elevat[ed] to the status of legally cognizable injuries

concrete, de facto injuries that were previously inadequate in law," the injury-in-fact requirement

is satisfied. *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578 (Kennedy, J., concurring

in part and concurring in the judgment)). "Congress has the power to define injuries and

articulate chains of causation that will give rise to a case or controversy where none existed

before." *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in

the judgment)).

Importantly, the *Spokeo* Court emphasized that "Congress' role in identifying and

elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact

requirement whenever a statute grants a person a statutory right and purports to authorize that

person to sue to vindicate that right." *Spokeo*, 136 S.Ct. at 1549. Rather, "Article III standing

requires a concrete injury even in the context of a statutory violation." *Id.* Put differently, the

deprivation of a right created by statute must be accompanied by "some concrete interest that is

affected by the deprivation." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

Plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In cases where "harms may be difficult to prove or measure[,] . . . the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)) (emphasis in original).

The *Spokeo* Court underscored two prior opinions where the Court held that a statutory "procedural" violation alone constitutes a concrete injury: *Federal Election Commission v. Akins*, 524 U.S. 11 (1998) and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). *See Spokeo*, 136 S. Ct. at 1549–50. In *Akins*, the Court was asked to determine if the public disclosure requirements under the Federal Election Campaign Act conferred standing. 524 U.S. at 13–14. The Court noted the purpose of the Act is "to remedy any actual or perceived corruption of the political process" by, among other means, "impos[ing] extensive recordkeeping and disclosure requirements upon groups that fall within the Act's definition of a 'political committee.'" *Id.* at 14. The high Court held that the plaintiff voters' "inability to obtain information" about the organization's donors was a concrete and particular injury in fact. *Id.* at 21.

Similarly, in *Public Citizen*, various public interest groups sued the Department of Justice under the Federal Advisory Committee Act for failing to disclose the names of potential federal

judicial nominees. 491 U.S. at 447. Addressing a challenge for lack of standing, the Supreme Court held that "refusal to permit [the plaintiffs] to scrutinize the ABA Committee's activities to the extent [the Federal Advisory Committee Act] allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. *Spokeo* thus reaffirmed that the "injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth*, 422 U.S. at 500 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)).

These fundamental principles guide the analysis of the standing questions raised in Defendant's motion. *Spokeo* instructs this Court to look to the common law and to the judgment of Congress, as reflected in the FDCPA, to determine whether the violations of that statute alleged by Plaintiff Allah-Mensah constitute concrete injuries that satisfy the case or controversy requirement.

### 2. The Present Action

The Law Office collection letter to Plaintiff failed to disclose that only the Law Office, as a debt collector, had the right to assume the debt was valid. Defendant claims that Plaintiff lacks standing because he did not suffer a concrete injury in receiving the letter. Rather, "the only damages identified by Plaintiff are so-called 'statutory damages' up to $1,000.00 provided for in 15 U.S.C. § 1692k(a)(2)(A)." ECF No. 18-1 at 5. Additionally, Defendant argues that "this [collection letter's] omission is nothing more than a procedural violation" and a legislatively created right divorced from a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." ECF No. 18-1 at 6.

8

In response, Plaintiff argues that he has suffered an injury-in-fact in three ways. First, Plaintiff contends the FDCPA is the type of statute enacted by Congress that creates legally cognizable injuries that were previously inadequate by law without additional harm. ECF No. 19 at 4. Second, Plaintiff asserts that the FDCPA violation at issue creates a risk of harm sufficient to establish a concrete injury. ECF No. 19 at 4. Lastly, Plaintiff argues that he and the class have suffered an "informational injury"—analogous to the injuries in *Akins* and *Public Citizen*— because the Law Office "fail[ed] to disclose information required by statute that the court has recognized as sufficient to establish a concrete injury." ECF No. 19 at 4.

The Court is persuaded that Plaintiff has pleaded sufficiently a concrete injury resulting from alleged violations of the FDCPA. *See Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016); *Mogg v. Jacobs*, No. 15-1142, 2016 WL 4395899, at *4 (S.D. Ill. Aug. 18, 2016); *accord Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98 (1st Cir. 2014) ("Section 1692g prohibits debt collectors from sending collection letters that overshadow or are otherwise inconsistent with the required validation notice. . . . The invasion of a statutorily conferred right may, in and of itself, be a sufficient injury to undergird a plaintiff's standing even in the absence of other harm. That is the case here.").

### a.   Violations of the FDCPA and Congressional Intent

When considering the FDCPA's purpose and statutory scheme, it is clear that Congress intended to elevate violations of the FDCPA "to the status of legally cognizable injuries." *Lujan*, 504 U.S. at 578. Additionally, the harms resulting from abusive debt collection practices are closely related to harms that traditionally provided a basis for relief in American and English courts, such as fraud. *See S. Dev. Co. v. Silva*, 125 U.S. 247, 250 (1888) (defining the legal

elements of a civil fraud); *Pasley v. Freeman* (1789) 100 Eng. Rep. 450 (K.B.) 450 ("A false

affirmation, made by the defendant with intent to defraud the plaintiff, whereby the plaintiff

receives damage, is the ground of an action upon the case in the nature of deceit."); Restatement

(Second) of Torts § 525 (1977) (discussing fraudulent misrepresentation).

Section 1692g(a) of the FDCPA provides, in relevant part:

> Within five days after the initial communication with a consumer
> in connection with the collection of any debt, a debt collector shall,
> unless the following information is contained in the initial
> communication or the consumer has paid the debt, send the
> consumer a written notice containing--
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after
> receipt of the notice, disputes the validity of the debt, or any
> portion thereof, **the debt will be assumed to be valid by the debt
> collector**;

15 U.S.C.A. § 1692g (emphasis added). Further, § 1692e of the FDCPA provides, in relevant

part:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt. Without limiting the general application of the foregoing, the
> following conduct is a violation of this section . . . .
> (10) The use of any false representation or deceptive means to
> collect or attempt to collect any debt or to obtain information
> concerning a consumer.

15 U.S.C. § 1692e. Whether a representation in the collection letter is false, misleading,

or deceptive in violation of § 1692e is determined from the vantage of the "least sophisticated

consumer . . . to ensure that the FDCPA protects all consumers, the gullible as well as the

shrewd." *Nat. Fin. Servs. Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318

(2d Cir. 1993)).

10

Congress enacted the FDCPA with the purpose of "eliminat[ing] abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e. The statute seeks "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices." S. Rep. No. 95-382 (1977), at 1. Congress found abuse by debt collectors to be a "widespread and serious national problem" with such abuse taking various forms including "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. 95-382, at 1 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.

Moreover, Congress indicated that the FDCPA was necessary because "[e]xisting laws and procedures for redressing th[o]se injuries [we]re inadequate." 15 U.S.C. § 1692b. Congress enacted the FDCPA to be "primarily self-enforcing," noting "consumers who have been subjected to collection abuses will be enforcing compliance." S. Rep. 95-382, at 5. The FDCPA contains non-exhaustive lists of prohibited practices, *see, e.g.*, 15 U.S.C. § 1692f, but among such abusive practices, Congress found, was the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Notably, the FDCPA is a strict liability statute, "impos[ing] liability on any debt collector who fails to comply with any provision of the Act," *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 375 (4th Cir. 2012) (internal quotations omitted). A consumer must only prove one violation to trigger liability. *Liversage v. Nationwide Debt Mgmt. Sols., LLC*, 2016 WL 106301, at *3 (D. Md. Jan. 11, 2016) (citing 15 U.S.C. § 1692k(a) and S*pencer v. Hendersen-Webb, Inc.*,

81 F. Supp. 2d 582, 590 (D. Md. 1999)); *see also* 15 U.S.C. § 1692k (creating civil liability for "any debt collector who fails to comply with any provision of this subchapter with respect to any person.").

The FDCPA does not require proof of actual damages before a consumer is entitled to statutory damages of up to $1,000.00 for each lawsuit. *See* 15 U.S.C. § 1692k(a)(2)(A); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) ("The FDCPA . . . permits the recovery of statutory damages up to $1,000 in the absence of actual damages. Thus, courts have held that actual damages are not required for standing under the FDCPA.") (citing *Keele v. Wexler*, 149 F.3d 589, 593–94 (7th Cir. 1998); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982)); *Salvati v. Deutsche Bank Nat. Trust Co.*, 575 F. App'x 49, 56 (3d Cir. 2014), *reh'g denied* (Aug. 19, 2014) ("[U]nder the FDCPA, a plaintiff may collect statutory damages even if he has suffered no actual damages) (citing *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007)).

### b.  The Alleged FDCPA Violation is Accompanied by a Concrete Interest Affected by the Deprivation

Having identified the interests that §1692g(a) and §1692e of the FDCPA seek to protect, it becomes clear that Plaintiff has suffered a concrete informational injury: Plaintiff has alleged that he was deprived of a disclosure to which he was statutorily entitled. A violation of §1692g(a)'s requirements for essential information regarding debt collection, coupled with §1692e's requirements that communication must be free from false or misleading representations, render Plaintiff's claims sufficient to meet the requirement of concreteness. *See Spokeo*, 136 S. Ct. at 1549; *accord Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH,

2016 WL 5661525, at *3 (W.D. Ky. Sept. 29, 2016) (violation of §1692g provides standing); *Rasha Hayes v. Convergent Healthcare Recoveries, Inc., et al.*, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016) (violation of §1692e provides standing).

In this regard, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) relied upon by Justice Thomas in his concurrence in *Spokeo*, is also instructive. *See Church*, 2016 WL 3611543, at *3 (citing *Havens*, 455 U.S. at 373). In *Havens*, the Supreme Court found that a black "tester" who was given false information about the availability of housing based on her race had standing to assert a claim under Section 804(d) of the Fair Housing Act. The Supreme Court observed that "Congress ha[d] . . . conferred on all 'persons' a legal right to truthful information about housing." *Id.* at 373. Further, "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* The *Havens* Court concluded that § 804(d), which "establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment." 455 U.S. at 373 (internal quotation marks and alterations omitted). "A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against." *Id.* Thus, the Supreme Court has "implicitly recognized" that certain types of "informational" injuries are "sufficient to support Article III standing." *Larson v. Trans Union, LLC*, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016) (citing *Spokeo*, 136 S. Ct. 1549–50); *see also Witt v. Corelogic Saferent, LLC*, 2016 WL 4424955, at *8 (E.D. Va. Aug. 18, 2016) ("In the wake of *Havens*, *Akins*, and *Public Citizen*, it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which constitutes a concrete injury.").

Here, Plaintiff has suffered an informational injury like the plaintiff in *Havens*. To guard against predatory debt collecting practices, the FDCPA confers to Plaintiff the right to know that missing the thirty-day window for challenging the debt does not render the debt once and for all "valid." 1692g(a). The Law Office's letter denied him that information and instead stated that once thirty days have passed, the debt is assumed "valid." ECF No. 1-3. When considered in the context of all the possible harms that the letter itself identifies as flowing from a "valid" debt, such as obtaining a judgment which "may be used to attach your wages, real and personal property, including your automobile," and which "may also show up on your personal credit record," the informational injury is made plain. ECF No. 1-3. Consequently, Plaintiff  has standing to proceed in his suit.

Since *Spokeo*, the Eleventh Circuit and multiple district courts have held similar informational omissions confer standing. *See Church*, WL 3611543 at *3 ("The invasion of Church's right to receive the disclosures is not hypothetical or uncertain . . . Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA."); *Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 4765839, at *6 (W.D. Wash. Sept. 13, 2016) (collecting cases); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury."); *Hall v. Glob. Credit & Collection Corp.*, 2016 WL 4441868, at *3 (M.D. Fla. Aug. 23, 2016) (Finding persuasive and "directly on point" the Eleventh Circuit's opinion in *Church* where the allegation that "the defendant failed to provide information she was entitled to receive . . . [is a] congressionally

elevated cognizable injury."); *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967 at

*5 (N.D. Ill. Aug. 11, 2016) ("[F]ailure to provide the Quinns with information required under

the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing.");

*Dickens v. GC Servs. Ltd. P'ship*, 2016 WL 3917530 at *2 (M.D. Fla. July 20, 2016) ("Congress,

through the FDCPA, entitled the plaintiff to certain information, and thus an alleged invasion of

this right is not hypothetical or uncertain."); *cf. Tourgeman v. Collins Financial Servs., Inc.*,

2016 WL 3919633 at *3 (S.D. Cal. June 16, 2016) (finding "examples of actual harm that

Tourgeman was at risk of facing because of the inaccuracies in the complaint he received,

therefore the concreteness requirement for Article III standing has been satisfied."); *but see*

*Perry v. Columbia Recovery Group, LLC*, 2016 WL 6094821, at *6 (W.D. Wash. Oct. 19, 2016)

(no harm sufficient to confer standing where debt collection letter informed Plaintiff that he had

thirty days from *receipt* of letter to dispute the debt); *Jackson v. Abendroth & Russell, P.C.*, 2016

WL 4942074, at *9 (S.D. Iowa Sept. 12, 2016) (finding no informational injury from an FDCPA

violation and distinguishing the access to information from that in *Akins* and *Public Citizen*).

Collectively, these courts have found that "through the FDCPA, Congress has created a

new right—the right to receive the required disclosures in communications governed by the

FDCPA—and a new injury—not receiving such disclosures." *Church*, 2016 WL 3611543, at *3.

*Accord Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467, at *3–4 (N.D. Ill. July 11,

2016) ("The information-access cases cited by *Spokeo* suggest that, in this case, [the plaintiff]

has alleged a sufficiently concrete injury because he alleges that [the defendant] denied him the

right to information due to him under the FDCPA."). That the named Plaintiff here did not take

further action to challenge the debt, as Defendant emphasized as oral argument, reinforces rather

than undermines this point. The informational injury alleged here may lead the unsophisticated debtor to believe the time to challenge the debt in any forum has once and for all passed after thirty days and so lull him to take no further action. In this way, Plaintiff's individual failure to challenge the debt is conduct consistent with the misinformation in the correspondence and highlights the precise nature of the informational harms that Congress was seeking to prevent.

### c.   A Material Risk of Harm is Also Triggered by this FDCPA Violation

Alternatively, standing is conferred because of the material risk of harm created by the Defendant's omission in its correspondence. *Spokeo* cautions that "not all inaccuracies cause harm or present any material risk of harm." *Spokeo*, 194 L. Ed. 2d 635. But distinguishable from the hypothetical incorrect zip code posited by the *Spokeo* Court, a debt collector's failure to indicate that the debt is considered valid solely by the debt collector is more than a "bare procedural violation" of the FDCPA. *See Saenz*, 2016 WL 5080747, at *2 ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury[,] . . . distinguishable from the "bare procedural violation" imagined in *Spokeo*.") (citation omitted).

Rather, such omission presents a material risk that the consumer would be misled into believing that the consumer has no right to challenge the debt after thirty days. *See Macy*, 2016 WL 5661525, at *4 (standing where deficient collection notice creates substantial risk that the consumer will lose FDCPA rights). As a result, the least sophisticated debtor might misconstrue the debt to be valid by parties other than the debt collector, such as courts or credit reporting agencies, and then waive the protections of subsection (b) to dispute the debt and seek validation.

ECF No. 19 at 9; *see Fariasantos v. Rosenberg & Associates, LLC*, 2 F. Supp. 3d 813, 822–23

(E.D. Va. 2014) ("[T]he letters 'must include some language that makes clear it is only the debt

collector that may assume validity and only for collection purposes; otherwise the debtor is left

uncertain about what entity will make the assumption and for what purpose.'") (quoting *Harlan*

*v. NRA Group, LLC*, 2011 WL 500024, at *3 (E.D. Pa. Feb. 9, 2011)); *accord Macy*, 2016 WL

5661525, at *4 (finding injury-in-fact and substantial risk that a consumer would waive FDCPA

protections by disputing a debt orally instead of in writing where the collection notice failed to

mention the in-writing requirement to dispute the debt). Accordingly, the Complaint adequately

alleges injury in fact, and the Plaintiff has standing to pursue his claim. *See Spokeo*, 136 S. Ct. at

1550.

### d.  Factual Challenge to Standing

Defendant's factual challenge to standing asserts that Plaintiff's request for statutory

damages is proof of a lack of concrete injury. But the FDCPA's right to information through a

strict liability statutory scheme requires no showing of actual damages. Following Defendant's

logic in requiring the Plaintiff to plead actual damages as proof of concrete injury fails on two

levels. First, it runs contrary to *Havens* in requiring a showing of causation and damages where

like the FHA, the FDCPA does not require this showing for liability. *See Liversage*, 2016 WL

106301, at *3 ("[T]he FDCPA is a strict liability statute, which means that a consumer need only

prove one violation of the FDCPA to collect statutory or actual damages.") (citations omitted).

The *Havens* plaintiff was a tester who would never be able to point to actual damages beyond the

informational injury as proof of concrete injury. Here, pleading an informational injury is

similarly sufficient.

Second, Defendant's contention that Plaintiff must plead actual damages to confer standing would run afoul of the statutory damages scheme itself.  The FDCPA provides that a consumer need only prove one violation to trigger statutory damages. 15 U.S.C. § 1692k(a)(2)(A); *Miller*, 321 F.3d at 307; *Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 521 (D. Md. 2013). Defendant's logic undermines the statutory damages provision by requiring proof of actual damages for standing where the same need not be proven at the liability phase. Such a result would not only do violence to the FDCPA's damages scheme, but it would undermine a statute designed to encourage private individuals to bring actions on behalf of a similarly affected citizenry. *Cf. Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("In order to prevail [under the FDCPA], it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."). For these reason, Defendant's factual challenge of Plaintiff's standing must also fail.

## IV.    CONCLUSION

For the foregoing reasons, it is this 17th day of November, 2016, Defendant's Motion to Dismiss will be DENIED. A separate order will follow.


 11/17/2016                                              /S/
Date                                        Paula Xinis
                                            United States District Judge